# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LARRY J. DARNEAL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-19-007-RAW-SPS |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** [1] | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Larry J. Darneal requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-one years old at the time of the administrative hearing (Tr. 28). He has a high school education and training in welding, and has worked as a solder assembler, bender, tubing machine operator, and solder machine operator (Tr. 28-29, 44). The claimant alleges that he has been unable to work since June 30, 2012, due to osteoarthritis, hypertension, and problems with his back, knees, feet, and hands (Tr. 143, 162).

## Procedural History

In May 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 12, 143-46). His application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled through December 31, 2017, his date last insured, in a written opinion dated April 25, 2018 (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), *i. e.,* he could lift and/or carry twenty-five pounds frequently and fifty pounds occasionally and sit/stand/walk six hours in an eight-

hour workday (Tr. 17).  The ALJ then concluded that the claimant was not disabled because he could return to his past relevant work as a solder assembler, tubing machine operator, and solder machine operator (Tr. 19-20).  Alternatively, the ALJ concluded that that there were other jobs that existed in significant numbers that the claimant could also perform but did not identify any such jobs (Tr. 20).  The ALJ then found that the claimant was not disabled under Medical-Vocational Rule 203.07 (the "Grids") (Tr. 20).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate his subjective symptoms, and (ii) finding that he had the RFC to perform medium work.  The undersigned Magistrate Judge agrees that the ALJ failed to conduct a proper step four analysis, and the Commissioner's decision should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of mild cardiomegaly and obesity; the non-severe impairments of hypertension, history of umbilical hernia, moderate hallux valgus and bunion deformity, degenerative changes of the first and second metatarsal phalangeal joints, plantar fascial calcification, and herpes zoster; and that his alleged knee, hand, and back impairments were not medically determinable (Tr. 15-16).

The medical evidence reveals that physician assistant Dean Anderson treated the claimant on several occasions between May 2013 and December 2017 (Tr. 230-32, 239-42, 247, 253-57, 292-99).  On May 8, 2013, the claimant presented for a routine check-up and reported pain in his hands "for years" from repetitive use at his job (Tr. 230).  Mr. Anderson found the claimant's deep tendon reflexes were normal, his grip strength was

-4-

full and equal bilaterally, and he had no swelling in his joints (Tr. 231-32). The claimant returned to Mr. Anderson on March 26, 2015, for a physical and apart from mild tenderness in the claimant's lumbar spine paravertebral muscles, his physical examination was normal (Tr. 239-242). A chest x-ray taken that day revealed a mildly enlarged heart (Tr. 242, 281). On May 18, 2017, the claimant reported bilateral heel pain towards the end of the day after being on his feet all day (Tr. 253-57). Mr. Anderson noted tenderness in the claimant's medial and lateral heel bilaterally, but his ankle examination was normal (Tr. 255). An x-ray of the claimant's left foot taken the same month revealed moderate hallux and bunion deformities, degenerative changes of the first and second metatarsal phalangeal joints, and plantar fascial calcification (Tr. 282). Mr. Anderson recommended an "ice massage" after activity/prolonged standing, encouraged a podiatry consult, and prescribed non-steroidal anti-inflammatory medication (Tr. 257). Additionally, an echogram of the claimant's abdomen conducted the same day revealed an umbilical hernia (Tr. 283). At a follow-up appointment on October 10, 2017, the claimant reported that his hernia protruded and became hard with heavy lifting but quickly softened and reduced, and that it was tender at times (Tr. 295-99). Mr. Anderson noted the claimant had pain in his lumbar spine with full flexion and palpation of the paravertebral muscles, difficulty arising from a squat stance, a slightly antalgic but steady gait, and bilateral tenderness to palpation in his knees but no ballotment or laxity (Tr. 296). He advised the claimant to refrain from lifting any weight greater than twenty or twenty-five pounds without assistance or the use of a tool (Tr. 296).

State agency physicians reviewed the record in July and August 2017 and concluded that the claimant's osteoarthritis and hypertension were non-severe (Tr. 53-54, 61-62). The ALJ did not send the claimant for a consultative examination.

At the administrative hearing, the claimant testified that he was unable to work as a welder because he could not lift/carry the pipes, rise from a kneeling or crouching/squatting position without something to hold on to, or make a fist with his hands (Tr. 36-38). The claimant further testified that Mr. Anderson treated his knee, back, and hand pain every three months with prescription-strength naproxen (Tr. 38-39). The claimant stated that although he experiences pain daily, he only takes his medication if he "overworks" himself because he does not like taking it (Tr. 39). Regarding activities of daily living, the claimant stated that he can no longer paint his house or complete yard work in a single day due to pain in his back, knees, and feet (Tr. 40-41). As to specific limitations, the claimant testified that he could sit for an hour before needing to stand and stretch his back and could stand for an hour or an hour and a half before needing to sit (Tr. 38).

In his written opinion, the ALJ summarized the medical evidence as well as the claimant's hearing testimony and function report (Tr. 14-19). The ALJ found the claimant's left foot impairments were non-severe because he was able to participate in specialized occupational retraining in welding (Tr. 15). In discussing the claimant's umbilical hernia, the ALJ found there was no specific evidence that it prevented him from lifting or resulted in any other significant functional limitation, noting the claimant testified that he stopped working as a welder due to a lack of stamina, not problems with his hernia (Tr. 15-16). The ALJ then noted that Mr. Anderson advised the claimant to refrain from

lifting over twenty-five pounds but found such statement was not an opinion that the claimant could not lift over twenty-five pounds, and even if it was, it was not well supported or persuasive because the claimant's minimal symptoms did not reasonably support a permanent lifting restriction (Tr. 16).

Step four of the sequential analysis is comprised of three distinct phases. The ALJ must first establish the claimant's RFC, then determine the demands of the claimant's past work (both physical and mental), and ultimately conclude whether the claimant's RFC enables him to meet those demands. *See, e. g., Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) [citations omitted]. At each phase, the ALJ must make specific factual findings, *id.*, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work," *id.* at 1025. *See Henrie v. U.S. Department of Health and Human Services*, 13 F.3d 359, 361 (10th Cir. 1993) ("We recognize the tension created when the mandate of [Soc. Sec. Rul. 82-62] is transposed on claimant's step four burden of proof. In this regard, we emphasize that it is not the ALJ's duty to be the claimant's advocate. Rather, the duty is one of inquiry and factual development.") [citation omitted], *citing* Soc. Sec. Rul. 82-62, 1982 WL 31386 (1983). Here, the claimant challenges the ALJ's findings at the first phase of the step-four analysis, *i. e.*, the claimant asserts there is no substantial evidence to support a finding that he can perform medium work.

The ALJ found that the claimant had the RFC to perform the full range of medium work (Tr. 17). "The RFC assessment must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

In this case, although the record contains objective evidence of an umbilical hernia and impairments to the claimant's left foot, including hallux and bunion deformities, degenerative changes of the first and second metatarsal phalangeal joint, and plantar fascial calcification, there are no physical RFC assessments in the record—from a treating physician, a consultative physician, or a state reviewing physician. Instead, the ALJ made his own determination that the claimant could lift/carry twenty-five pounds frequently and fifty pounds occasionally due to his activities, particularly lifting forty-five pounds while he worked as a welder (Tr. 19). The ALJ also made his own determination that the claimant could sit, stand, or walk up to six hours per day in light of Mr. Anderson's minimal findings as to the claimant's heels in May 2017 and as to his gait in October 2017, as well as the claimant's own report that he could stand on his feet all day (Tr. 18).

Although the ALJ did cite to medical and nonmedical evidence as support for his RFC determination, his reasons are not entirely supported by the record. Indeed, the ALJ discounted Mr. Anderson's statement regarding the claimant's lifting limitations and also

-8-

declined to adopt the opinions from the state reviewing physicians, leaving open the question of what the ALJ *did* rely on in formulating the claimant's RFC. For example, the ALJ noted the claimant's gait was only slightly antalgic in October 2017 but did not discuss that Mr. Anderson also found the claimant's knees were tender to palpation and that he had difficulty arising from a squat stance (Tr. 296). Furthermore, none of the claimant's welding jobs amounted to substantial gainful activity (Tr. 30). Additionally, the ALJ found that the claimant lifted forty-five pounds while working as a welder, but the claimant's testimony was that he was unable to work as a welder partly because he could not lift/carry the forty to forty-five-pound pipes (Tr. 29-30, 36). Similarly, the ALJ found that the claimant reported he was able to be on his feet all day, but the claimant's entire report was that he had bilateral heel pain towards the end of the day after being on his feet all day (Tr. 18, 253). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ( "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). The ALJ thus failed to point to evidence demonstrating that the claimant can perform medium work.

As in *Jagodzinski*, "[t]he problem in this case is the absence of evidence regarding plaintiff's impairments and limitations[.]" 2013 WL 4849101, at *5. "When the medical evidence indicates . . . that the record is insufficient to make an RFC finding, it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform medium work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Id. See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted]. This was particularly important in this case because the only examining source in the record, Mr. Anderson, indicated that the claimant could do less than the full range of medium work.

Accordingly, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's RFC. On remand, the ALJ should consider recontacting the claimant's treating medical source, requesting further medical records, and/or ordering a consultative examination. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). An ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, thus giving him broad latitude in making such a decision.

*See Hawkins* 113 F.3d at 1166-67 (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). But such an examination would have been helpful in this case, because in its absence the ALJ had no opinions as to the claimant's physical RFC. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record. The ALJ could also request that a state agency physician review the record and provide an RFC assessment.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**